IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:15-CV-00125-RLV-DCK

| | |
|---|---|
| LUZ MARIA LOPEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| RELIANCE STANDARD LIFE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendant Reliance Standard Life Insurance Company's Motion for Summary Judgment (the "Motion").[1] [Doc. No. 3]. Plaintiff Luz Lopez has failed to oppose the Motion. Accordingly, this matter is now ripe for review. For the reasons that follow, the Motion is **GRANTED**.

**I.     BACKGROUND**

RSI Home Products, Inc. (hereinafter, "RSI Home") operates a manufacturing facility located in North Carolina. Defendant Reliance Standard Life Insurance Company (hereinafter, "Defendant" or "Reliance") is a Philadelphia-based insurance company that issued a group life insurance policy, policy number GL 148211, (the "Policy") to the employees of RSI Home. [Doc. No. 6-1] at p. 1 (¶ 4). The Policy's effective date was January 1, 2011, and continued into perpetuity as long as the required premium was paid. *See* [Doc. No. 6-1] at pp. 1 (¶ 4), 5. The Policy provides that it insures "eligible persons for the amount of insurance shown in the Schedule of Benefits." *Id.* at p. 5. According to the Schedule of Benefits, an "eligible" person is an "active,

---

[1] On April 19, 2016, the Court converted Defendant's Motion from a motion to dismiss to a motion for summary judgment. [Doc. No. 5]. The Court provided appropriate notice to all parties and allowed supplemental briefing. *Id.*; *see also* Fed. R. Civ. Pro. 12(d), 56(f). Only Defendant chose to file a supplemental brief. *See* [Doc. No. 6].

Full-Time Employee," except for a "Union Employee and any person employed on a temporary or seasonal basis." *Id.* at p. 15; *accord* [Doc. No. 6-1] at p. 17 (defining an "eligible person" to be "a person who meets the eligibility requirements of the Policy"). Further, under the Policy, RSI Home chose to secure basic life insurance for all of its "eligible" employees at zero premium cost to those employees. *See* [Doc. No. 6-1] at pp. 15-16. "Basic" insurance amounts to "[t]wo (2) times earnings, rounded to the next higher $1,000, subject to a maximum Amount of Insurance of $200,000." *Id.* at p. 15.

Once a triggering event occurs, the Policy provides a specific procedure by which a claim can be made to Reliance and considered for payment. Specifically, written notice of a claim must be provided to Reliance within thirty-one days after the occurrence of a purportedly covered loss, and such notice must include the purported insured's name, the policy number, and the claimant's name. [Doc. No. 6-1] at p. 32. A written proof of loss is required, which must, among other things, "describe the occurrence, extent and nature of the loss." *Id.* Proof of loss must be given to Reliance within one year and, if covered, payment "will be made as soon as proper proof is received." *Id.* If benefits under the Policy are due to be paid because of death, then the benefits will be paid to a designated beneficiary. *Id.* at pp. 25, 32. The Policy also contains a limitations clause, which provides that "[n]o legal action may be brought" to recover under the Policy more than three years from the date on which submission of a written proof of loss is required, except in Kansas, South Carolina, and Michigan. *Id.* at p. 32.

Macedonio Lopez was employed by RSI Home under the name Ricardo Galarza (hereinafter, "Galarza"). On February 23, 2013, Galarza died of an unspecified cause; however, at the time of his death, Galarza was still employed with RSI Home. On April 2, 2013, Reliance received a claim for life insurance benefits under the Policy from an individual representing to be

Galarza's girlfriend, Plaintiff Luz Maria Lopez. [Doc. No. 6-1] at pp. 1 (¶ 5), 48-49. In support of her claim, Plaintiff provided Reliance with a Lincoln County, North Carolina death certificate, which evidences that a "Macedonio Francisco Viruel Lopez" had perished on February 23, 2013, from an unstated cause. [Doc. No. 6-1] at pp. 1-2 (¶¶ 6-7), 51. On April 30, 2013, by letter (the "April 2013 Letter"), Reliance denied Plaintiff's claim because of "discrepancies in the names, ages, and marital status between Mr. Galarza, the insured, and the person identified on the Certificate of Death." *Id.* at pp. 2 (¶ 8), 53-55. The April 2013 Letter also states, in relevant part, as follows:

> You may request a review of this determination by submitting your request in writing to:
> Reliance Standard Life Insurance Company
> Quality Review Unit
> P.O. Box 8330
> Philadelphia, PA 19101~8330
>
> This written request for review must be submitted within 60 days of your receipt of this letter. Your request should state any reasons why you feel this determination is incorrect, and should include any written comments, documents, records, or other information relating to your claim for benefits. Only one review will be allowed, and your request must be submitted within 60 days of your receipt of this letter to be considered.
>
> . . .
>
> In the event that your claim is subject to the Employee Retirement Income Security Act of 1974 ("the Act"), you have the right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review. Your failure to request a review within the 60 days of your receipt of this letter may constitute a failure to exhaust the administrative remedies available under the Act, and may affect your ability to bring a civil action under the Act.

[Doc. No. 6-1] at pp. 2 (¶ 9), 54.

After the April 2013 Letter was dispatched, Reliance received no further communications from Plaintiff for over a year. *See id.* at p. 3 (¶ 11). There is no evidence in the record demonstrating that Plaintiff did not receive the April 2013 Letter. *See id.* at p. 3 (¶ 12). In the fall of 2014, Reliance

received a letter from Plaintiff's counsel requesting a review of the denial of coverage. [Doc. No. 6-1] at pp. 2-3 (¶¶ 10-12). Reliance refused to consider this August 2014 communication as an appeal of the claim decision, and notified Plaintiff that the denial of coverage had become final. *Id.* at p. 3 (¶ 13).

On September 22, 2015, Plaintiff filed suit against Reliance in the Superior Court of Lincoln County, North Carolina. [Doc. No. 1-1] at p. 4. On October 13, 2015, Defendant Reliance removed the action to this Court, asserting federal question jurisdiction. *See* [Doc. No. 1] at p. 2 (¶ 6); *see also* 28 U.S.C. § 1331; 29 U.S.C. § 1132(e). That same day, Defendant filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. [Doc. No. 3]; *see also* Fed. R. Civ. Pro. 12(b)(6). In the Motion, Defendant argues that the complaint should be dismissed as a result of Plaintiff's failure to exhaust her administrative remedies under the Employee Retirement Income Security Act of 1974, *as amended*, 29 U.S.C. §§ 1001, *et al.* ("ERISA"). Plaintiff did not file an opposing memorandum. On April 19, 2016, the Court converted the Motion to one for summary judgment, and provided each party the opportunity to file a supplemental memorandum and additional evidence. [Doc. No. 5]. Defendant made its filings in accordance with the Court's directive. *See* [Doc. No. 6]. Plaintiff, however, chose not to do so.

**II.      DISCUSSION**

      A.      <u>Standard of Review</u>

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to support or oppose a summary judgment motion, a party is required to cite to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials;" or show "that

the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *accord Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) (applying former version of Rule 56); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (same).

The mere existence of "some" factual disputes will not defeat summary judgment; rather, the dispute presented must be "genuine" and concern "material" facts. *Anderson*, 477 U.S. at 247-248 (emphasis in original); *see also Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Only disputes over facts that might affect the outcome of the suit under relevant governing law fall within that category. *See*, *e.g.*, *Reid v. Dalco Nonwovens, LLC*, ___ F.Supp.3d ___, ___, 2016 WL 51271, at *6 (W.D.N.C. Jan. 4, 2016) (Voorhees, J.). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

Abstract or conjectural doubts, minor discrepancies, and points irrelevant to the "material" facts are not genuine or significant and do not cast sufficient doubt on the validity of testimony to preclude the entry of summary judgment. *Emmett*, 532 F.3d at 297; *Hux v. City of Newport News, Va.*, 451 F.3d 311, 315 (4th Cir. 2006). The non-movant cannot demonstrate a triable issue of disputed fact by building one inference upon another. *Emmett*, 532 F.3d at 297 (citing *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Although it is certainly true that "the facts and all reasonable inferences must be viewed in the light most favorable to the non-moving party," *Smith v. Va. Commonwealth Univ.*, 84 F.3d 672, 675 (4th Cir. 1996) (en banc), it is equally true that a court is "well within its discretion in refusing to ferret out the facts [and inferences] that counsel

has not bothered to excavate." *Cray Commc'ns. Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 396 (4th Cir. 1994).

B. Preliminary Issues

Before reaching the merits of the Defendant's exhaustion argument, the Court must first consider whether the Policy is governed by ERISA and, if so, whether there exists subject matter jurisdiction over the removal. The Court will address those issues in turn.

1. *The Policy is Governed by ERISA*

Although the parties appear to have diversity of citizenship, it is undisputed that the complaint seeks only $62,000.00 as a result of the Defendant's claim denial, exclusive of interest, costs, and attorneys' fees. Diversity jurisdiction is, therefore, inappropriate and the removal of the action to this Court is only proper if there is a federal question at issue. In support of removal, Defendant asserts that federal question jurisdiction exists because the Policy is governed and regulated by ERISA. Therefore, before proceeding to the merits of Defendant's argument, the Court must first consider whether the Policy is subject to ERISA, as ERISA governance is a condition precedent to a finding that subject matter jurisdiction is proper under these circumstances.

ERISA is a federal statute that is intended to "comprehensively" govern and regulate "employee benefit plan[s]." *See*, *e.g.*, 29 U.S.C. §§ 1002(1), 1003(a), 1144(a); *see also Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir. 1992) (stating that congressional intent in enacting ERISA was to establish "a comprehensive statutory scheme" to govern employee benefit plans). Specifically, ERISA defines "employee benefit plan" as either an "employee pension benefit plan" or an "employee welfare benefit plan." 29 U.S.C. § 1002(3). ERISA further defines "employee welfare benefit plan" as:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) . . . benefits in the event of . . . death . . . .

*See* 29 U.S.C. § 1002(1). The Fourth Circuit has condensed this statutory definition into a concise set of five elements. *See Madonia v. Blue Cross & Blue Shield of Virginia*, 11 F.3d 444, 446 (4th Cir. 1993) (citing and relying on *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982) (en banc)). These elements require proof that a particular benefit plan is (1) a "plan, fund, or program;" (2) "established or maintained;" (3) "by an employer;" (4) "for the purpose of providing[,]" *inter alia*, "death" benefits; (5) "to participants or their beneficiaries." *See Madonia*, 11 F.3d at 446 (citing *Donovan*, 688 F.2d at 1371); *see also* 29 U.S.C. § 1002(1) (specifying that the provision of "death" benefits qualifies for regulation under ERISA).

A "plan" exists if "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *See Madonia*, 11 F.3d at 446 (quoting *Donovan*, 688 F.2d at 1373). Further, "employers may easily establish ERISA plans by purchasing insurance for their employees." *Madonia*, 11 F.3d at 447 (citing *Libbey-Owens-Ford v. Blue Cross & Blue Shield Mutual of Ohio*, 982 F.2d 1031, 1034 (6th Cir.1993); *Brundage-Peterson v. Compcare Health Servs. Ins. Corp.*, 877 F.2d 509, 511 (7th Cir.1989); *Credit Managers Assoc. v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir.1987)). The existence of a "plan" is sufficiently evidenced where it is shown that an employer pays the premiums for an insurance benefit on behalf of its employees. *See Madonia*, 11 F.3d at 447 (citing *Kidder v. H & B Marine, Inc.*, 932 F.2d 347, 353 (5th Cir.1991); *Donovan*, 688 F.2d at 1373). An "employer" means "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan[.]" 28 U.S.C. § 1002(5). A

"participant" is "any employee or former employee of an employer, . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . , or whose beneficiaries may be eligible to receive any such benefit." 28 U.S.C. § 1002(7); *see also Madonia*, 11 F.3d at 448. The term "beneficiary" means "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 28 U.S.C. § 1002(8).

After applying the above-cited elements and definitions to the facts at issue, it is clear that the Policy is a "plan" that has been "established" and "maintained" by an "employer" for the purpose of providing qualified benefits to "participants or their beneficiaries." Based on the terms and conditions contained within the four corners of the Policy, a "reasonable person" can easily determine that the Policy provides death benefits to a defined class of RSI Home's full-time employees. [Doc. No. 6-1] at pp. 15, 17. The Policy also reasonably specifies the procedures for obtaining payment of those benefits upon the death of an eligible employee. *Id.* at pp. 25, 32. Indeed, the Policy specifically states that payment will be made upon a claimant's presentment of a timely and accurate proof of loss to Defendant, where the proof of loss provides the information specifically requested by the Policy's claim provisions, and the proof shows an entitlement to payment. *Id.* Further, the Policy specifically provides that the death benefit being claimed (i.e., "basic" life insurance) is completely financed by RSI Home's premium payments to Defendant and at zero cost to RSI Home's employees. *See* [Doc. No. 6-1] at pp. 1, 5, 15-16. In addition, RSI Home is clearly an "employer" that established the Policy for the purpose of providing a qualifying benefit (life insurance benefits) to its employees, which might also be claimed by a designated beneficiary. Finally, this case unmistakably concerns qualified participants and beneficiaries as such are defined by law and the terms of the Policy. The decedent is alleged to have been RSI

Home's employee at the time of his death, and Plaintiff is alleged to have been the decedent's designated beneficiary as to any benefits due under the Policy. Thus, ERISA's statutory requirements are satisfied. *See*, *e.g.*, *Madonia*, 11 F.3d at 446-47. Accordingly, the Court finds that the Policy is an "employee benefit plan" governed and regulated by ERISA. *See* 29 U.S.C. §§ 1002(1), 1144(a).

2. *The Court has Subject Matter Jurisdiction Over this Action*

Having found that the Policy is subject to ERISA, the Court must next consider whether that finding is sufficient to confer subject matter jurisdiction over the complaint. It is well-established that, even if a particular policy is governed by ERISA, a court should not assume that federal question jurisdiction exists in every case. *See*, *e.g.*, *Provident Life & Acc. Ins. Co. v. Waller*, 906 F.2d 985, 990 (4th Cir. 1990) ("[F]ederal question jurisdiction exists pursuant to ERISA only where the issue in dispute is of 'central concern' to the federal statute."). Indeed, Defendant has raised ERISA's exhaustion requirement as a *defense* to the Plaintiff's state law claim. Ordinarily, a "federal defense" is one that "does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *See Darcangelo v. Verizon Communs., Inc.*, 292 F.3d 181, 187 (4th Cir. 2002) (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). Absent a finding of conflict preemption or complete preemption, "when ERISA is simply asserted as a defense to a state law claim, the state claim is not converted into a federal claim, and there is no federal question giving rise to removal jurisdiction." *See Darcangelo*, 292 F.3d at 187; *see also* 29 U.S.C. § 1144(a) (specifying the scope of ordinary conflict preemption under ERISA – i.e., that state laws are superseded insofar as they "relate to" an ERISA plan).

If preemption is found, however, "state claims . . . are converted into federal claims" for jurisdictional purposes. *See Darcangelo*, 292 F.3d at 187. "The Supreme Court has determined

that ERISA's civil enforcement provision, § 502(a) (29 U.S.C. § 1132(a)), completely preempts state law claims that come within its scope and converts these state claims into federal claims under § 502. Thus, when a complaint contains state law claims that fit within the scope of ERISA's § 502 civil enforcement provision, those claims are converted into federal claims, and the action can be removed to federal court." *Darcangelo*, 292 F.3d at 187 (citation omitted).

A detailed review of the complaint indicates that Plaintiff is seeking to recover on a breach of contract theory, based upon her status as an alleged third-party-beneficiary to the Policy. *See*, *e.g.*, [Doc. No. 1-1] at p. 5 (¶ 12). Thus, the question the Court must answer is whether her state law claim is completely preempted by ERISA, such that the claim becomes a federal claim and confers federal question jurisdiction to the Court. *See*, *e.g.*, *Gables Ins. Recovery, Inc. v. Blue Cross & Blue Shield of Florida, Inc.*, 813 F.3d 1333, 1337 (11th Cir. 2015); *Darcangelo*, 292 F.3d at 187. The Court finds that Plaintiff's claim *is* preempted.

ERISA's section 502(a) creates a private right of action for a plan participant or beneficiary to recover benefits due under the terms of a health insurance plan. *See* 29 U.S.C. § 1132(a). This section "has such 'extraordinary' preemptive power that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' " *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1344 (11th Cir. 2009) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)); *see also Darcangelo*, 292 F.3d at 187. The Fourth Circuit has held that a claim for breach of contract by a participant or beneficiary that seeks the enforcement of benefits under an ERISA plan is "clearly preempted" by section 502, and is therefore converted into a federal claim. *See Darcangelo*, 292 F.3d at 194-95. This analysis is not changed simply because the breach of contract claim is being asserted under a third party beneficiary theory of recovery, as presented in this case. *See*, *e.g.*, *Jarvis v. Stewart*, 2005 WL

3088589, at *3 (M.D.N.C. 2005) ("Even though this is a third-party beneficiary suing for breach of contract, at the heart of this claim is a suit for breach of agreement to provide disability pay, a claim that seeks to enforce plan rights . . . ."); *see also Erwin v. Texas Health Choice, L.C.*, 187 F.Supp.2d 661, 667 (N.D. Tex. 2002) (holding ERISA preempts third-party-beneficiary claims from employees that attempt to enforce the contract for an ERISA plan between the employer and ERISA plan provider).

Here, Plaintiff alleges that she is a third-party-beneficiary to the decedent's benefits under the Policy. Further, her complaint is based upon a state law breach of contract claim, being pursued through her third-party-beneficiary status. Under relevant Fourth Circuit precedent, and the above-cited persuasive authority, this claim is completely preempted by ERISA's "extraordinary preemptive power." *See Conn. State Dental Ass'n*, 591 F.3d at 1344. Because the complaint's breach of contract claim is completely preempted by ERISA's section 502 enforcement mechanism, the Plaintiff's claim is converted from one rooted in state law to a claim arising under federal law. Therefore, the Court properly has subject matter jurisdiction to consider the merits of the Defendant's Motion.

C. <u>Plaintiff Lopez Failed to Exhaust her Administrative Remedies</u>

Defendant has moved for summary judgment on the ground that Plaintiff has failed to exhaust her administrative remedies under the Policy. In paragraph 11 of the complaint, Plaintiff contends only that her claim for benefits was denied. *See* [Doc. No. 1-1] at p. 5 (¶ 11). Nowhere in the complaint is it alleged that Plaintiff appealed the claim denial prior to filing suit. Defendant has put forth evidence that it advised Plaintiff of her right to seek an appeal of the claim denial within sixty-days from her receipt of the April 2013 Letter. *See* [Doc. No. 6-1] at pp. 2 (¶ 9), 53-55. It is undisputed that Plaintiff did not seek to appeal the denial until August 7, 2014 – more than

a year later. *See* [Doc. No. 6-1] at pp. 2-3 (¶¶ 10-13), 57. Plaintiff filed this lawsuit more than a year later; however, her right to appeal the claim decision expired two years prior. Thus, it is also undisputed that Plaintiff failed to utilize and exhaust the administrative procedures set forth under the Policy prior to filing the instant suit.

In *Coyne & Delany Co. v. Blue Cross & Blue Shield of Virginia, Inc.*, 102 F.3d 712 (4th Cir. 1996), the Court of Appeals for the Fourth Circuit held, as follows:

> [ERISA's] exhaustion requirement is grounded in section 503, which requires ERISA benefit plans to provide notice and an explanation of any claim denial and to afford claimants reasonable opportunity to receive a "full and fair review" of the decision denying their claim. These mandatory administrative claims procedures manifest a congressional intent to "minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of benefit claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement." Virtually all of the federal circuits have recognized the exhaustion requirement.

*Id.* at 716 (citations omitted). In *Gayle v. UPS, Inc.*, 401 F.3d 222 (4th Cir. 2005), on which Defendant relies, the Fourth Circuit held as follows:

> [Because] the pursuit and exhaustion of internal Plan remedies is an essential prerequisite to judicial review of an ERISA claim for denial of benefits, . . . and since this is impossible here, [plaintiff's] claims are barred.

*See id.* at 230.

Here, the Court is presented with a classic example of a failure to exhaust an administrative remedy, precipitated by the claimant's undue delay in pursuing the administrative appeals process available to her. While "ERISA does not contain an explicit exhaustion provision[,]" *Makar v. Health Care Corp. of Mid–Atl. (CareFirst)*, 872 F.2d 80, 82 (4th Cir.1989), "[a]n ERISA welfare benefit plan participant must[, nevertheless,] both pursue and exhaust plan remedies before gaining access to the federal courts." *Gayle*, 401 F.3d at 226 (exhaustion of plan's remedies is "a prerequisite to an ERISA action for

denial of benefits"). The evidence of record clearly demonstrates that Plaintiff failed to appeal the Defendant's denial of her claim to the Policy's death benefits within the time prescribed by the Defendant's administrative review process. Indeed, her attempted appeal was more than a year late, and the instant action was filed more than two years after her right to appeal expired. Therefore, it is "impossible" for Plaintiff to now attempt to cure her failure, and her federal action to recover under the Policy is now "barred." *See Gayle*, 401 F.3d at 230. Accordingly, Defendant is entitled to summary judgment.[2]

---

[2] There are two exceptions to the application of ERISA's inherent exhaustion requirement. First, if it appears that it would be futile for a plaintiff to have pressed his or her claim through the plan's established remedies, then a failure to exhaust may be excused. *See Kunda v. C.R. Bard., Inc*, 671 F.3d 464, 472 (4th Cir. 2011). Second, if it appears that a plaintiff would have been denied "meaningful access" to established internal procedures, then, again, a failure to exhaust may be excused. *See*, *e.g.*, *Hailey v. Commonwealth Aluminum Corp.*, 903 F.Supp. 910, 912 (D.Md. 1995); *Vogel v. Indep. Fed. Sav. Bank*, 728 F.Supp. 1210, 1223 (D.Md. 1990); *Taylor v. Bakery & Confectionary Union & Indus. Int'l Welfare Fund*, 455 F. Supp. 816, 820 (E.D.N.C. 1978) (citing Vaca v. Sipes, 386 U.S. 171, 185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)); *accord Schorsch v. Reliance Standard Life Ins. Co.*, 693 F.3d 734, 739 (7th Cir. 2012); *Winchell v. Gen. Motors Corp.*, 774 F.2d 1165, 1985 WL 13678, at *5 (6th Cir. 1985). Here, Plaintiff has submitted no evidence or argument to suggest that either of these exceptions apply. Further, the Court has reviewed the record and finds that the evidence submitted does not demonstrate that appealing Defendant's claim denial would have been "futile," or that Defendant's actions did not provide Plaintiff with "meaningful access" to a review procedure. Indeed, the evidence shows that Defendant notified Plaintiff of the denial, and that it notified her of the appeal process; however, Plaintiff waited more than a year to attempt to comply with that process. *See*, *e.g.*, [Doc. No. 6-1] at pp. 2-3 (¶¶ 9-13), 53-55, 57. Thus, any judicially-created exception to the exhaustion requirement, of which the Court is aware, is inapplicable under the circumstances of this case.

**III. DECRETAL**

**IT IS, THEREFORE, ORDERED THAT**

(1) Defendant Reliance Standard Life Insurance Company's Motion for Summary Judgment (Doc. No. 3) is hereby **GRANTED**; and

(2) The Clerk shall enter a judgment in favor of Defendant and against the Plaintiff, and this case shall be administratively terminated.

**SO ORDERED**.

Signed: June 3, 2016

Richard L. Voorhees
United States District Judge